[Civ. No. 23622.   Second Dist., Div. Three.   Sept. 3, 1959.]

ALFRED KUMELAUSKAS, Respondent, v. ROSARIO COZZI, Appellant.

Schell, Delamer & Loring for Appellant.

Irving H. Green and Eric Julber for Respondent.

VALLÉE, J.—Appeal by defendant from a judgment for plaintiff entered on a jury verdict in an action for damages for personal injuries. Defendant pleaded that plaintiff was contributively negligent.

The accident occurred about 2:30 a. m. in the morning of March 10, 1956, at the intersection of Sunset Boulevard and West Lavita Terrace in Los Angeles. Plaintiff was a pedestrian; defendant was the driver of an automobile. Sunset runs generally east and west; West Lavita, generally north and south. There was no crosswalk on the west side of the intersection; there was an unmarked crosswalk on the east side. Defendant was driving an automobile west on Sunset in the lane next to the double line. The speed limit on Sunset was 25 miles an hour. Plaintiff was crossing Sunset. As plaintiff was crossing, he was struck by defendant's car, leaving a slight dent in the left-front fender.

Police officers arrived at the scene about five minutes after the accident and found plaintiff lying about 5 feet east of the west curb line of West Lavita and 2 feet south of the double white line. He had not been moved. He was taken to the receiving hospital and later to the county hospital.

Plaintiff testified he had no recollection whatsoever of the accident and could not explain why or how it occurred; that on March 9, 1956, the day before the accident, he left his home about 9 a. m. to go to his union to try to get a job, and the next thing he remembers after that was waking up in the hospital and seeing his leg in a cast.

A police officer who was a special investigator assigned to the accident investigation division testified he interviewed plaintiff in the hospital on March 12, 1956. He thought he got a good report from plaintiff. Plaintiff told him he was involved in an accident with a car; the car was westbound on Sunset; he was a pedestrian; he was walking across Sunset in a northerly direction; he was within a marked crosswalk on the west side of Lavita Terrace; he had not seen the car before the impact; he saw it at the moment of impact; he had had one beer at the race track in the afternoon. The officer showed plaintiff a picture of the intersection and plaintiff indicated a position on the west side of Lavita Terrace as the place where the accident occurred. The county hospital record of March 11, 1956, the day after the accident, showed that plaintiff was ''Alert, oriented, conscious.''

At plaintiff's request the court gave these instructions:

"The law presumed that Alfred Kumelauskas, the plaintiff in this action, in his conduct at the time of and immediately preceding the accident here in question, was exercising ordinary care and was obeying the law.

"These presumptions are a form of prima facie evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. When there is other evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the presumption and any evidence that may support the presumption, to determine which, if either, preponderates. Such deliberations, of course, should be related to and be in accordance with my instructions on the burden of proof."

"The presumption is that every man obeys the law, and the presumption in this case is that the plaintiff Alfred Kumelauskas was crossing the street in a careful and prudent manner, was keeping a proper lookout for his own safety, and was at all times exercising ordinary care.

"This presumption is in itself a species of evidence, and it shall prevail and control your deliberations until and unless it is overcome by satisfactory evidence."

Defendant asserts prejudicial error. He says these instructions twice told the jury unconditionally that plaintiff was entitled to a presumption that he was exercising due care and did not inform them that plaintiff was entitled to such presumption only if he had in fact lost his memory of the accident.

One who, by reason of loss of memory, is unable to testify concerning his conduct at and immediately before the time of an accident, is entitled to invoke the presumption that he exercised ordinary care for his own concerns, subject to the exception that such presumption is dispelled by evidence introduced by such party which is wholly irreconcilable therewith. (*Scott* v. *Burke*, 39 Cal.2d 388, 394 [247 P.2d 313].)

The rule is established that if a person whose claimed negligence is in issue is unable to testify by reason of loss of memory, the fact that other witnesses for the parties testify fully as to the accident and conduct of the allegedly negligent person does not deprive the party relying on the presumption of the benefit thereof unless the testimony which he himself produces, under circumstances which afford no indication that the testimony is the product of mistake or inadvertence, is wholly irreconcilable with the presumption. (*Gigliotti* v. *Nunes*, 45 Cal.2d 85, 93 [286 P.2d 809].)

■ It is the rule that the evidence must show that the loss of memory claimed by a party was caused by the accident to bring the presumption into play. (*Scott* v. *Sheedy,* 39 Cal.App.2d 96, 101 [102 P.2d 575] ; *Gioldi* v. *Sartorio,* 119 Cal.App.2d 198, 201 [259 P.2d 62] ; *Thompson* v. *Southern Michigan Transp. Co.,* 261 Mich. 440 [246 N.W. 174, 176] ; *Drago* v. *New York Cent. & H. R. R. Co.,* 139 App.Div. 828 [124 N.Y.S. 374, 376].) The amnesia must be genuine. (*Ringo* v. *Johnson,* 99 Cal.App.2d 124, 129-130 [221 P.2d 267] ; *Bergman* v. *Bierman,* 138 Cal.App.2d 692, 696 [292 P.2d 623].) The court in *Scott* v. *Burke, supra,* 39 Cal.2d 388, held (p. 393) it was proper to instruct that "if the jury believed that defendant as a result of the shock of the accident was unable to remember and testify as to his own conduct or other facts of the accident then a presumption arose that he 'was obeying the law and was exercising ordinary care and doing such acts as an ordinarily prudent person would have done in the same circumstances.' "

In *Gioldi* v. *Sartorio,* 119 Cal.App.2d 198 [259 P.2d 62], it was said (p. 201) : "The point chiefly relied upon by appellants is their claim that the court erred in giving an instruction on the presumption of plaintiff's exercise of due care. Plaintiff testified that she had no recollection of anything which occurred between the night before her injuries and sometime after the accident when she found herself in the hospital. . . . The court carefully qualified the instruction on the presumption of care by instructing the jury that the presumption would only arise 'if . . . you find . . . that as a result of the accident plaintiff was deprived of her memory of events leading up to such accident.' Under the circumstances of this case this instruction was properly given."

In *Zollars* v. *Barber,* 140 Cal.App.2d 502 [295 P.2d 561], the plaintiff, a pedestrian, was injured when struck by an automobile while crossing a street at an intersection in a marked crosswalk. The court stated (p. 507) :

"Respondent's [plaintiff's] testimony was not so unhampered by special circumst[a]nces as that of appellant. Although she fully testified as to what she did and the care she took prior to the accident, she testified that she suddenly became unconscious and did not know from her own observation how the accident happened. She could therefore not expressly controvert appellant's evidence intimating that she stumbled over a traffic button. No other witness produced by her testified to the manner in which the accident happened.

If she actually was unconscious and therefore could not testify as to what happened during certain period in which she could have been negligent (e.g., in not seeing the traffic button) she was for that period entitled to the presumption of due care. ■ *As there was a conflict in the evidence as to her unconsciousness the instruction on the presumption of due care should have been conditioned on the jury's believing that she was unconscious.*" (Emphasis added.)

■ It is a question of fact whether plaintiff sustained a loss of memory as a result of the accident. (*Hensley* v. *Harris,* 151 Cal.App.2d 821, 824-825 [312 P.2d 414]; *Masterson* v. *Ward,* 157 Cal.App.2d 142, 148 [320 P.2d 613].) In *Hensley* v. *Harris, supra,* it was held grave error to take this vital question from the jury.

■ The giving of the instructions without qualification was clearly error. ■ It is only where a party, by reason of a loss of memory, is unable to testify respecting his acts and conduct at and immediately before the time of the accident that the presumption applies. If a party is merely feigning loss of memory, the presumption does not come into play. Plaintiff was only entitled to a presumption of due care if the jury should first find that he had in fact lost his memory. The effect of the instructions given necessarily was to tell the jury that plaintiff was entitled as a matter of law to the presumption even though they might have believed that he did not lose his memory. ■ The instructions should have been conditioned on the jury's believing that as a result of the accident plaintiff lost his memory as to his acts and conduct at and immediately before the time of the accident.

The question remains whether the error was prejudicial. While the jury's verdict for plaintiff is not, as a matter of law, unsupported by the evidence, a verdict in favor of defendant would find substantial support in the evidence. There is much in the record to throw doubt on plaintiff's testimony with respect to his loss of memory. Evidence as to the circumstances of the accident is in sharp conflict. There was evidence that plaintiff went into a saloon at the northwest corner of Sunset and West Lavita between midnight and 1 a. m. of the night of the accident; that he remained there until the place closed at 2 a. m. and had at least two whiskey drinks. There was evidence that plaintiff walked from the north to the south side of Sunset, that he turned around and started back across the street, that he was standing around in the midst of traffic swearing at passing motorists and at-

tempting to direct them, that as he crossed the double line he lurched into the left-front fender of defendant's car, and that the accident did not occur in a crosswalk. One of the police officers testified that at the receiving hospital he detected "a very strong odor of alcohol" on plaintiff's breath. Another officer who arrived at the scene within five minutes testified he smelled a fairly strong odor of alcohol on plaintiff; he was two or three feet from plaintiff at the time. The records at the receiving hospital and the county hospital showed plaintiff had been drinking.

In determining whether the giving of the instructions was error, we must assume that the jury might have disbelieved the evidence with respect to plaintiff's loss of memory and believed the testimony to the effect that he did not suffer such loss. The instructions in question might well have led the jury to believe that they were to accept plaintiff's testimony respecting his loss of memory as true. ▮ "Where, as here, the error consisted in instructing the jury as a matter of law on a question that is one of fact on conflicting evidence, and a determination favorable to the losing party might have been made if the error had not been committed, that error is prejudicial." (*Clement* v. *State Reclamation Board,* 35 Cal.2d 628, 644 [220 P.2d 897].) In *Butigan* v. *Yellow Cab Co.,* 49 Cal.2d 652, 660-661 [320 P.2d 500], it is stated:

"The determination whether, in a specific instance, the probable effect of the instruction has been to mislead the jury and whether the error has been prejudicial so as to require reversal depends on all the circumstances of the case, including the evidence and the other instructions given. No precise formula can be drawn."

▮ As stated earlier, defendant pleaded plaintiff was contributively negligent. From the evidence, the jury could reasonably have drawn the inference either way on the vital issue of plaintiff's contributory negligence. The giving of the instructions in question manifestly added strength to plaintiff's contention that he was acting with due care for his own safety, and thus overemphasized his claim in the minds of the jury. Defendant was thereby compelled to overcome by a preponderance of the evidence not only any testimony favorable to plaintiff's claim that he was free from contributory negligence, but also the presumption that he was acting with due care. (*Ford* v. *Chesly Transportation Co.,* 101 Cal.App.2d 548, 553 [225 P.2d 997].) It was therefore prejudicial error to give the instructions.

Other points urged by defendant, including numerous erroneous rulings on the admissibility of evidence, are not likely to occur on a retrial and need not be considered.

We are of the opinion after an examination of the entire cause, including the evidence, that the error complained of has resulted in a miscarriage of justice.

Reversed.

Shinn, P. J., and Wood (Parker), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 28, 1959.